1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| MICHALOBE QUINCY LOUIS, | ) | No. CV 06-2690 PA (FFM) |
| Petitioner, | ) | REPORT AND RECOMMENDATION |
| v. | ) | OF UNITED STATES MAGISTRATE |
| | ) | JUDGE |
| KEN CLARCK, Warden, | ) | |
| Respondent. | ) | |

This Report and Recommendation is submitted to the Honorable Percy
Anderson, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and
General Order No. 194 of the United States District Court for the Central District
of California.

## I.  PROCEEDINGS

Petitioner Michalobe Quincy Louis, a state prisoner in the custody of the
California Department of Corrections, filed a Petition for Writ of Habeas Corpus
by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet.")
on May 3, 2006 and a First Amended Petition ("First Amended Petition" or
"FAP") on July 27, 2006.  (*See* Pet. at 1; FAP at 1).  The First Amended Petition
is the operative petition in this case.

/ / /

Respondent filed an Answer to the First Amended Petition ("Answer" or "Ans.") on August 30, 2006 and petitioner filed a Reply on June 18, 2007. (*See* Ans. at 1; Reply at 1). The matter stands submitted and ready for decision. For the reasons that follow, the Magistrate Judge recommends that the Court deny the First Amended Petition and dismiss this action with prejudice.

## II.  PROCEDURAL HISTORY

Following a jury trial in Santa Barbara County Superior Court (Case No. 10961111), on September 17, 2003, petitioner was convicted of ten felony and misdemeanor counts, including three counts of first degree residential burglary (Cal. Penal Code § 459) and multiple counts of felony and misdemeanor indecent exposure (Cal. Penal Code § 314.1), and felony and misdemeanor child molestation (Cal. Penal Code § 647.6(a), (b)). (Clerk's Transcript ("CT") at 219-31). The trial court sentenced petitioner to state prison for a total term of eight years and eight months. (*Id.* at 299-300, 311-12).

Petitioner sought direct review before the California Court of Appeal. (Lodgment ("Lodg."), Items 1-4). By a reasoned and unpublished decision filed on January 27, 2005, the appellate court affirmed the judgment in full. (*Id.*, Item 4). On April 13, 2005, the California Supreme Court denied petitioner's petition for review. (*Id.*, Items 5-6).

## III.  FACTUAL BACKGROUND

On direct review, the California Court of Appeal set forth the factual background pertaining to petitioner's conviction, as follows:

> [Petitioner] (age 32) committed the offenses at a Goleta apartment complex where he exposed himself and made lewd comments to young females.

/ / /

2

*Counts 1-3: Burglary, Indecent Exposure, Child Molestation*

Elizabeth E. (age 15) and Daniel E. (age 11) live next door to [petitioner].  In the spring of 2001, Elizabeth and Daniel were sick and stayed home from school.  Their parents were at work.

[Petitioner] entered the apartment uninvited and went upstairs. Elizabeth was talking on the phone.  [Petitioner] stood in front of Elizabeth and fondled his penis.  Exposing his penis, he asked Elizabeth if it was big and if she would like it.  [Petitioner] played with his penis and asked if he could be her "first."  Elizabeth ordered him to leave the apartment.

[Petitioner] walked into Daniel's bedroom, made sexual comments about a poster of a female wrestler, and fondled his penis. Daniel ordered him to leave, pushed him down the stairs, and locked the front door. Elizabeth's mother reported the incident to the housing authority and called the sheriff.

*Counts 4-5: Burglary, Child Molestation*

In the summer of 2001 [petitioner] entered Elizabeth E.'s apartment uninvited.  Elizabeth was leaning over a couch. [Petitioner] reached towards Elizabeth's hips and moved his pelvis back and forth, simulating intercourse.  [Petitioner] said, "Let's go upstairs, let's do [it] doggy style."

Elizabeth's friend, Vanessa C. (age 15), was on the phone talking to Paloma R.  [Petitioner] took the phone and made lewd comments to Paloma.

*Count 6: Burglary*

A year earlier, in the summer of 2000, Briana M. (age 12) spent the night at Elizabeth's apartment.  The two slept on the living room floor. [Petitioner] entered the apartment uninvited and spoke to

3

Briana.  Elizabeth was still asleep.  [Petitioner] exposed his penis and made lewd comments.  Briana told him to leave and reported the incident to her mother, Elizabeth's mother, and the police.

*Counts 9 & 10: Indecent Exposure, Child Molestation*

In September 2001, Vanessa B. (age 15) and Vanessa C. (age 15) stopped by Elizabeth E.'s apartment on the way to school.  The girls waited for Elizabeth on a bench.  [Petitioner] approached, wearing jogging shorts with nothing under the shorts.  Propping his leg on a wall, he exposed his penis and asked: "Does this look like a good stretch for jogging?"  After the girls turned their heads, [petitioner] stood in front of them and exposed his penis.  The girls reported the incident to school authorities.

*Counts 11 & 12: Indecent Exposure and Child Molestation*

In the spring of 2001, Yvonne G. (age 13) visited Elizabeth E. and helped prepare a snack.  Yvonne phoned [petitioner] to borrow a lemon and was told to come next door.  After Yvonne knocked, [petitioner] walked down the stairs with his genitals exposed.  [Petitioner] was wearing only a T-shirt.

*Prior Sexual Misconduct*

Evidence of prior sexual misconduct was received to show [petitioner's] propensity to commit the charged sex offenses. ([Cal.] Evid.Code, § 1108.)  Lori F., the apartment manager, testified that [petitioner] made lewd comments, talked about how large his penis was, and stalked women in the apartment complex.  On the evening of October 31, 1998, [petitioner] entered Lori's apartment, grabbed her breasts, and said "my manhood is bursting out of my pants."

Lori pushed him outside, but [petitioner] returned two more times.  Lori threatened to call the police and shoot him.

1    Jhoan N., [petitioner's] ex-sister-in-law, testified that

2    [petitioner] sexually assaulted her in 1993 when she was 17 years

3    old.  [Petitioner] asked Jhoan to massage him, grabbed her hand, and

4    put it on his genitals.

5    In 1995, [petitioner] asked 16 year old Jaleilah S. if she was a

6    virgin and masturbated in front of her.  On another occasion,

7    [petitioner] dragged Jaleilah into his apartment, and, wearing only a

8    T-shirt, raped her and photographed her vagina and buttocks.

9    (Lodg., Item 4 at 2-4).

10

11                          **IV.  PETITIONER'S CLAIMS**

12    As discussed further below, the First Amended Petition raises the following

13    claims:

14    Ground One: The admission of propensity evidence at petitioner's trial

15    violated his rights to due process and equal protection (FAP at 5; *see also* Lodg.,

16    Item 1 at 13-17, Item 5 at 9-11); and

17    Grounds Two and Three: The trial court improperly imposed an upper term

18    sentence based on its, and not a jury's, determination of aggravating factors, in

19    violation of petitioner's jury trial rights (FAP at 5-6; *see also* Reply at 7-9 and

20    Lodg., Item 1 at 27-28, Item 5 at 6-8).

21

22                          **V.  STANDARD OF REVIEW**

23    The standard of review applicable to petitioner's claims herein is set forth

24    in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death

25    Penalty Act of 1996 ("AEDPA") (Pub. L. No. 104-132, 110 Stat. 1214 (1996)).

26    *See* 28 U.S.C. § 2254(d); *see also Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct.

27    2059, 138 L. Ed. 2d 481 (1997).  Under the AEDPA, a federal court may not

28    grant habeas relief on a claim adjudicated on its merits in state court unless that

5

adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[1]  28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 402, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

The phrase "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."[2] *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  However, a state court need not cite the controlling Supreme Court cases in its own decision, "so long as neither the reasoning nor the result of the state-court decision contradicts" relevant Supreme Court precedent which may pertain to a particular claim for relief.  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (*per curiam*).

A state court decision is "contrary to" clearly established federal law if the decision applies a rule that contradicts the governing Supreme Court law or reaches a result that differs from a result the Supreme Court reached on "materially indistinguishable" facts. *Williams*, 529 U.S. at 405-06.  A decision involves an "unreasonable application" of federal law if "the state court identifies

---

[1]     In addition, under 28 U.S.C. § 2254(e)(1), factual determinations by a state court "shall be presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing evidence."

[2]     Under the AEDPA, the only definitive source of clearly established federal law is set forth in a holding (as opposed to dicta) of the Supreme Court. *See Williams*, 529 U.S. at 412; *see also Yarborough v. Alvarado*, 541 U.S. 652, 660-61, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004) (citing *id.*).  Thus, while circuit law may be "persuasive authority" in analyzing whether a state court decision was an unreasonable application of Supreme Court law, "only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

1  the correct governing legal principle from [Supreme Court] decisions but

2  unreasonably applies that principle to the facts of the prisoner's case." *Williams*,

3  529 U.S. at 413.  A federal habeas court may not overrule a state court decision

4  based on the federal court's independent determination that the state court's

5  application of governing law was incorrect, erroneous, or even "clear error."

6  *Lockyer*, 538 U.S. at 75.  Rather, a decision may be rejected only if the state

7  court's application of Supreme Court law was "objectively unreasonable."  *Id*.

8         The relevant state court proceedings which pertain to petitioner's present

9  allegations took place on direct review before the California Court of Appeal and

10 the California Supreme Court.  (*See* FAP at 5-6; Lodg., Items 1-6).  As discussed

11 further below, the state appellate court denied relief by reasoned opinion.  (Lodg.,

12 Item 4 at 1-11).  The state supreme court thereafter denied relief "without

13 prejudice to any relief to which defendant might be entitled after this court

14 determines in *People v. Black,* S126182, and *People v. Towne,* the effect of

15 *Blakely v. Washington* (2004) ___ U.S. ___ 124 S.Ct. 2531, on California law."

16 (*Id.*, Item 6 at 1).  Because the California Court of Appeal's opinion is the last

17 reasoned state-court decision on petitioner's present allegations, to the extent that

18 petitioner's allegations may be cognizable herein, it is that opinion which is the

19 focus of the Court's review under the AEDPA.  *See Ylst v. Nunnemaker*, 501 U.S.

20 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991); *Shackleford v. Hubbard*,

21 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (citing *id.* at 803-04).

22

23                              **VI.  DISCUSSION**

24 **A.    Propensity evidence.**

25        In Ground One, petitioner contends that the admission of propensity

26 evidence at his trial violated his rights to due process and equal protection.  (*See*

27 FAP at 5).  As in the state courts on direct review, the "propensity evidence" to

28 which petitioner appears to refer is that evidence of petitioner's prior sex offenses

admitted by the trial court pursuant to California Evidence Code § 1108 over defense objection under California Evidence Code § 352.[3]  (*See id.* and Lodg., Item 1 at 13-27, Item 5 at 9-15; *see also, e.g.,* Reporter's Transcript ("RT") at 12-43 and Lodg., Item 4 at 3-4).  In the state courts, petitioner's contentions of unconstitutionality were broad and directed toward section 1108 itself.  (Lodg., Item 1 at 13-17, Item 5 at 9-11).  In sum, petitioner contended that the statute violates due process because it allows the admission of prejudicial and inflammatory evidence.  (*Id.*).  Petitioner also contended that the statute violates equal protection because it discriminates against defendants charged with sexual offenses (like petitioner) by allowing the admission of propensity evidence, when such propensity evidence purportedly is not admitted against defendants who are not charged with such offenses.  (*Id.*).  Thus, in the state courts, petitioner raised a facial, not an as-applied, challenge to the constitutionality of section 1108 on federal due process and equal protection grounds.  (*Id.*).  By the allegations of Ground One, petitioner appears to reassert the same facial challenge as a basis for federal habeas relief.[4]  (*See* FAP at 5).  On direct review, the California Court of

_____

[3]    California Evidence Code § 1108 provides that: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101 [prohibiting use of character evidence to prove conduct], if the evidence is not inadmissible pursuant to Section 352."  California Evidence Code § 352 provides that: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

[4]    To the extent petitioner *may* also challenge the admission of the subject evidence on the ground that the trial court abused its discretion in admitting the evidence over petitioner's objection under California Evidence Code § 352, which resulted in a miscarriage of justice within the meaning of state constitutional law warranting reversal (challenges also raised by petitioner in the state courts on

(continued...)

1   Appeal rejected petitioner's federal constitutional claims on the merits, as well as

2   on procedural grounds.[5] (Lodg., Item 4 at 5-7).

3    _____

4   [4](...continued)

5 direct review and denied by those courts, *see, e.g.,* Lodg., Item 1 at 17-27, Item 4 at 7-9, Item 5 at 11-15, Item 6), such state law claims are not cognizable on federal

6 habeas review and would not present a basis for relief herein. *See* 28 U.S.C.

7 § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("In conducting habeas review, a federal court is limited to deciding

8 whether a conviction violated the Constitution, laws, or treaties of the United

9 States"); *Smith v. Phillips,* 455 U.S. 209, 221, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982) ("A federally issued writ of habeas corpus, of course, reaches only

10 convictions obtained in violation of some provision of the United States

11 Constitution"); *Poland v. Stewart,* 169 F.3d 573, 584 (9th Cir. 1999) ("Federal habeas courts lack jurisdiction, however, to review state court applications of state

12 procedural rules").

13

14 [5]     Respondent asserts that Ground One of the First Amended Petition is procedurally barred, in light of the California Court of Appeal's determination that

15 petitioner had waived his due process and equal protection claims by failing to object on those specific grounds in the trial court. (Ans. Memorandum at 15 n.5).

16 When a state court clearly denies a habeas petition for failure to comply with an

17 adequate and independent state procedural rule, federal habeas relief ordinarily is not available. *See, e .g., Coleman v. Thompson,* 501 U.S. 722, 729-30, 111 S. Ct.

18 2546, 115 L. Ed. 2d 640 (1991); *Wells v. Maass,* 28 F.3d 1005, 1008 (9th Cir.

19 1994). A state procedural rule is "independent" if it is not interwoven with federal

20 law. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2002) (citations omitted). A state procedural rule is "adequate" if it is "clear, consistently applied, and well

21 established at the time of the petitioner's purported default." *Fields v. Calderon,*

22 125 F.3d 757, 762 (9th Cir. 1997).

23     Here, the general ground cited in the state appellate court's decision -- failure to make a contemporaneous objection in the trial court -- *may* be sufficient

24 to impose a procedural default in an appropriate case. *Murray v. Carrier,* 477

25 U.S. 478, 485, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986) (federal habeas review of defaulted constitutional claim is not available to petitioner who failed to comply

26 with state's contemporaneous objection rule at trial and did not establish cause and

27 prejudice). However, in raising the affirmative defense of any procedural default, respondent bears the burden of establishing its nature and applicability in *this*

28

(continued...)

1      Petitioner does not cite any United States Supreme Court precedent which

2  holds that due process is violated where a state law permits the use of "other

3  acts" evidence to show propensity to commit a charged crime.  (FAP at 5; *see*

4  *also* Lodg., Item 1 at 13-17, Item 5 at 9-11).  In fact, the Supreme Court has

5  expressly declined to address the issue.  *See Estelle,* 502 U.S. at 75 n.5 ("Because

6  we need not reach the issue, we express no opinion on whether a state law would

7  violate Due Process if it permitted the use of 'prior crimes' evidence to show

8  propensity to commit a charged crime").[6]  Similarly, petitioner has failed to cite

9  and the Court is not aware of any United States Supreme Court authority which

10  holds that the admission of evidence of prior sexual offenses in trials of sexual

11  crimes (or other propensity evidence in trials of other crimes) violates a criminal

12

13

---

14

15  [5](...continued)

16  case.  *See Gray v. Netherland,* 518 U.S. 152, 165-66, 116 S. Ct. 2074, 135 L. Ed.
   2d 457(1996); *McCleskey v. Zant,* 499 U.S. 467, 493-94, 111 S. Ct. 1454, 113 L.

17  Ed. 2d 517(1991); *Bennett,* 322 F.3d at 585-86; *Karis v. Vasquez,* 828 F.Supp.

18  1449, 1463 n.21 (E.D. Cal. 1993).  Respondent has not met this burden, as he has
   not offered *any* argument to establish either the adequacy or independence of a

19  state procedural bar in *this* case.  (*See* Ans. Memorandum at 15 n.5).  Thus, this

20  Court's review of present Ground One is not barred by any finding of procedural
   default in the state courts.  *Id.; see also Day v. McDonough,* 547 U.S. 198, 208-10,

21  126 S. Ct. 1675, 164 L. Ed. 2d 376 (2006).

22

23  [6]      *See also Mejia v. Garcia,* 534 F.3d 1036, 1046 (9th Cir. 2008), *cert. denied,*
   ___ U.S. ___, 129 S. Ct. 941, 173 L. Ed. 2d 141 (2009) (noting that Supreme

24  Court's decision in *Estelle v. McGuire* left open the issue whether a state law

25  would violate due process by permitting use of prior crimes evidence to show
   propensity to commit a charged crime); *Alberni v. McDaniel,* 458 F.3d 860, 866-

26  67 (9th Cir. 2006) (declining to declare a constitutional principle relating to the

27  propriety of admitting propensity evidence was clearly established where the
   Supreme Court "had expressly concluded the issue was an 'open question'"), *cert.*

28  *denied,* 549 U.S. 1287, 127 S. Ct. 1834, 167 L. Ed. 2d 333 (2007).

1  defendant's federal constitutional right to equal protection.[7]  (FAP at 5; *see also*

2  Lodg., Item 1 at 13-17, Item 5 at 9-11).

3      Because petitioner is unable to point to any United States Supreme Court

4  decision holding that a state law which allows the admission of prior bad acts

5  evidence violates a criminal defendant's federal constitutional rights to due

6  process or equal protection, it cannot be said that the state appellate court's

7  rejection of petitioner's allegations in these respects either was contrary to or

8  involved an unreasonable application of clearly established Supreme Court law.

9  *See Carey v. Musladin,* 549 U.S. 70, 75-77, 127 S. Ct. 649, 166 L. Ed. 2d 482

10 (2006) (where fair-trial rights claim pertaining to courtroom conduct of spectators

11 implicated an "open question in [Supreme Court's] jurisprudence," state court's

12 decision rejecting claim could not be considered "contrary to or an unreasonable

13 application of clearly established federal law"); *Moses v. Payne,* 555 F.3d 742,

14 762 (9th Cir. 2009) ("Because the state appellate court's disposition of

15 [petitioner's] appeal was not contrary to or an unreasonable application of

16 apposite Supreme Court precedent, we cannot grant the writ"); *Brewer v. Hall,*

17 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly

18 established federal law relating to the legal issue the habeas petitioner raised in

19 state court, the state court's decision cannot be contrary to or an unreasonable

20 application of clearly established federal law").

21      Accordingly, by the allegations of Ground One, petitioner does not

22 establish a basis for federal habeas relief and the Court should deny Ground One

23 in its entirety.  *See* 28 U.S.C. § 2254(d).

24

---

25 [7]      Petitioner's allegations of an equal protection violation are further

26 inadequate because petitioner does not establish either that he is a member of a

27 suspect class in the first instance or that the challenged provision burdens a

   fundamental right.  *See United States v. LeMay,* 260 F.3d 1018, 1030-31 (9th Cir.

28 2001)).

1

**B.      Upper term sentence.**

Grounds Two and Three pertain to the trial court's imposition of an upper term sentence of six years for one of petitioner's three residential burglary convictions;[8] the trial court designated the subject burglary count as the base count in the present action.[9]  (*See* FAP at 5-6; *see also* RT at 865-69 and Lodg., Item No. 4 at 9-11).  In sum, the trial court imposed the upper term based on its, and a jury's, determination of the following aggravating factors, which were derived from the circumstances of the offense: (1) "as compared to victims of similar crimes," a victim of the subject residential burglary (and victims in the two other residential burglaries) was "particularly vulnerable," and was (like the other victims) a "young teenage girl[]" in her home, which placed her "in a uniquely vulnerable position" (Cal. R. Ct. 4.421(a)(3)); (2) that the offense (and the other burglaries) showed planning, sophistication, or professionalism and sophistication in its commission (Cal. R. Ct. 4.421(a)(8)); and (3) that petitioner took advantage of a position of trust or confidence to commit the offense (and the other burglaries) (Cal. R. Ct. 4.421(a)(11)).  (RT at 865-66).

By the allegations of present Ground Two, petitioner appears to assert the same claim he presented in the state courts on direct review, wherein he

---

[8]      At the time petitioner was sentenced in December 2003 pursuant to the then-in-effect version of California's determinate sentencing law ("DSL"), first degree residential burglary was punishable by a six-year high term, a four-year mid-term, or a two-year low term.  *See* Cal. Penal Code § 461(a), former § 1170(b).

[9]      The trial court also imposed consecutive 16-month terms (or one-third the mid-term) on the other burglary counts, and imposed and stayed additional terms on the remaining counts (with none of the foregoing terms challenged by petitioner here); petitioner's sentence totaled eight years and eight months.  (*See* FAP at 5-6; *see also* RT at 865-69, CT at 299-300, 311-12, and Lodg., Item No. 4 at 9-11).

1 challenged the trial court's actions in this respect as violating his jury trial rights

2 under the Sixth Amendment, as set forth in *Blakely v. Washington*, 542 U.S. 296,

3 301, 124 S. Ct. 2531, 159 L. Ed.2d 403 (2004) and its antecedents.[10]  (*See, e.g.,*

4 FAP at 5; Reply at 7-9; Lodg., Item 1 at 27-28, Item 5 at 6-8).  In the state courts,

5 petitioner argued that his jury trial rights were violated because the trial court

6 improperly imposed an upper term sentence based on its, and not a jury's,

7 determination of aggravating factors.  (Lodg., Item 1 at 27-28, Item 5 at 6-8).

8      Those allegations designated as "Ground Three" in the present First

9 Amended Petition (filed in 2006) reference the then-pendency of *Cunningham v.*

10 *California,* 549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007), the issuance

11 of which, petitioner noted, "could result in a reversal of my upper term sentence."

12 (*See* FAP at 6).  In his June 18, 2007 Reply, filed after *Cunningham* was issued in

13 January 2007, petitioner again references *Cunningham* and notes that it "clearly

14 forbids a judge from finding aggravating facts based on the nature of the crime,"

15 and that the subject aggravating factors derived from the circumstances of the

16 offense should have been submitted to a jury for its determination.  (Reply at 7-

17 9).  Thus, to the extent that petitioner has referenced *Cunningham* herein, it

18 appears that he has done so in furtherance of the same contentions he has

19 advanced under *Blakely*.  (*Id.; see also* FAP at 6).  However, none of petitioner's

20 contentions establish a basis for relief.

21

22

23 [10]      The Court notes that petitioner was sentenced on December 1, 2003, before

24 the Supreme Court issued *Blakely* in June 2004.  (CT at 299-300, 311-12; *see*

25 *Blakely*, 542 U.S. at 296).  However, petitioner's conviction did not become final

   until 2005, the following year, and, as noted, petitioner also presented a *Blakely*

26 claim to both the state appellate and supreme courts on direct review.  (*See* Lodg.,

27 Items 1-6; *see Clay v. United States*, 537 U.S. 522, 527-32 and ns. 3-4, 123 S. Ct.

   1072, 155 L. Ed. 2d 88 (2003); *Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir.

28 2001); *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999); Sup. Ct. R. 13).

**1.     Background.**

Noting what it described as an unsettled state of law (in California state courts) regarding the effect of the United States Supreme Court's decision in *Blakely*, the California Court of Appeal in this case denied petitioner's sentencing claim without prejudice, stating that "there is no point for this court to 'weigh in' again on *Blakely*" because "[t]he views of an intermediate [state] appellate court cannot now be considered dispositive"; the appellate court's denial acted to affirm the trial court's imposition of the upper term on the subject burglary count.[11]   (Lodg., Item No. 4 at 9-11; *see also id.* at concurring and dissenting op.

_____

[11]     Specifically, on direct review (after *Blakely* but before *Cunningham*), the California Court of Appeal rejected petitioner's claim, stating, among other things, that,

> This court has previously held that *Blakely* required reversal in a similar nonpublished case.  Our Supreme Court granted review.  (*People v. Butler* B167710, filed 9/22/04, review granted 12/1/04.)  This court has also previously held that *Blakely* was not implicated in a similar published opinion.  Our Supreme Court granted review.  (*People v. Vonner* (2004) 121 Cal.App.4th 801, 811, review granted 10/20/04.)
>
> There is no point for this court to "weigh in" again on *Blakely.*  Whether we were previously correct or incorrect in either or both of the aforementioned cases remains to be seen.  The views of an intermediate appellate court cannot now be considered dispositive.
>
> Until our California Supreme Court speaks to the issue, a new sentencing hearing with no definitive guidance to the trial court would not be productive.  We do not believe that upper and/or consecutive terms violate [petitioner's] Sixth Amendment rights.  As noted in *Apprendi:*  "We should be clear that nothing . . . suggests that it is impermissible for judges to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing a judgment *within the range* prescribed by statute."  (*Apprendi v. New Jersey, supra,* 530 U.S. at p. 481 [147 L.Ed.2d at p. 449].)  That is what happened [during petitioner's] sentencing

(continued...)

1    at 1-2).  But, in denying relief, the state appellate court *also* stated its view that

2    the trial court's imposition of the upper (and consecutive) terms did *not* violate

3    petitioner's jury trial rights, quoting *Blakely's* predecessor, *Apprendi v. New*

4    *Jersey,* 530 U.S. 466, 481, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), wherein the

5    Supreme Court stated "'that nothing . . . suggests that it is impermissible for

6    judges to exercise discretion -- taking into consideration various factors relating

7    both to offense and offender -- in imposing a judgment within the range

8    prescribed by statute.'"[12]  (*Id.* at 10 (quoting *Apprendi,* 530 U.S. at 481))

9    (emphasis omitted).

10       As the foregoing reflects, the particular basis of decision by the state

11   appellate court is somewhat unclear.  In one sense, the decision appears to present

12   a denial without prejudice which did not rest on a determination of federal

13   constitutional law and, thus, in this light, "there is no state court decision on [the

14   merits of the constitutional violation alleged] to which to accord deference" under

15   28 U.S.C. § 2254(d) and petitioner's allegations would be subject to review on a

16   *de novo* basis.  *Pirtle v. Morgan,* 313 F.3d 1160, 1167 (9th Cir. 2002); *see also*

17   *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003) (same).  On the other hand,

18   the state appellate court did construe federal law *and* may or may not have done

19

20

21

22   _____

23   [11](...continued)

24            hearing.  Nevertheless, in the event that our California Supreme Court
         grants relief in this situation, [petitioner] should be entitled to the

25       benefit thereof.  We trust that if such relief is to be granted,
         defendants  would be required to request relief in the trial court in the

26       first instance.

27   (Lodg., Item No. 4 at 9-11 (emphasis in original)).

28   [12]       *See* footnote 11, *supra.*

so on an *arguendo* basis.[13]  If the state court's construction is viewed as

presenting only an *arguendo* analysis, such an analysis would present only a

*hypothetical* determination, which would not appear to comprise a *decision* on the

merits, and, in turn, would not appear to be subject to the deferential standard of

review afforded to state court decisions on the merits under the AEDPA.  Thus,

*de novo* review still would appear to apply.  *Id.*  And, if *not* viewed as an

*arguendo* analysis but as a decision on the merits (and denying relief without

prejudice), the appellate court's determination would appear to be objectively

unreasonable under the AEDPA.  That is, as discussed further below, the

Supreme Court has concluded that an upper-term sentence under California's then

operative sentencing statute violates the Sixth Amendment if it is imposed on the

basis of aggravating facts, "'except for a prior conviction,'" not found by a jury

beyond a reasonable doubt.  *See Cunningham,* 549 U.S. at 290 ("If the jury's

verdict alone does not authorize the sentence, if, instead, the judge must find an

additional fact to impose the longer term, the Sixth Amendment requirement is

not satisfied") (citing *Blakely,* 542 U.S. at 305 and n.8); *see also Oregon v. Ice,*

555 U.S. ___, 129 S. Ct. 711, 718, 172 L. Ed. 2d 517 (2009) (*Apprendi* and

*Blakely* "hold that it is within the jury's province to determine any fact (other than

the existence of a prior conviction) that increases the maximum punishment

authorized for a particular offense").  Here, the trial court did not rely on a prior

conviction to impose the upper term on the subject burglary count.  (*See* CT at

299-300, 311-12; RT at 865-69).  Instead, the trial court relied on its

determination of factual circumstances in aggravation which were related to and

_____

[13]      In light of its statement that any determination by it of *Blakely's* effect
would not be dispositive, the appellate court's decision in this respect *may* be
viewed as an *arguendo* determination of the merits of petitioner's claim; however,
the appellate court's decision also *may* be viewed as a determination of and denial
on the merits of petitioner's claim, with such denial rendered without prejudice.
(Lodg., Item 4 at 10).

1    arose from the subject offense. In this respect, the court found that the factual

2    circumstances reflected victim vulnerability; petitioner's breach of a position of

3    trust thereto; and planning, sophistication, or professionalism in petitioner's

4    commission of the offense. (*See id.*). Thus, the trial court appears to have

5    rendered a sentencing decision on a basis which is outside the "bright-line rule"

6    reaffirmed in *Cunningham,* in principal reliance on *Blakely,* as well as its

7    antecedents. *See, e.g., Cunningham,* 549 U.S. at 290-93. Therefore, if viewed as

8    a determination on the merits, the appellate court's conclusion to the contrary

9    would appear to be objectively unreasonable and, in *this* light, *de novo* review

10    still would appear to apply in this case.[14] *See, e.g., Pirtle,* 313 F.3d at 1167;

11    *Nulph,* 333 F.3d at 1056. Given that *de novo* review appears to apply regardless

12    of whether the appellate court's determination is considered a denial on the

13    merits, the Court need not resolve the issue of the precise import of the appellate

14    court's decision in this respect and will apply *de novo* review herein. As follows,

15    the Court finds that petitioner's allegations regarding the trial court's imposition

16    of an upper term do not present a basis for federal habeas relief.[15]

17

---

18    [14]    *See, e.g., Lockyer*, 538 U.S. at 71-72 (relevant state court decision is judged

19    with reference to "the governing legal principle or principles set forth by the

20    Supreme Court *at the time the state court renders its decision*") (emphasis added).

21    [15]    Respondent asserts that petitioner's Sixth Amendment claim is barred under

22    *Teague v. Lane,* 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989). (Ans.

23    Memorandum at 17-25 (citations omitted)). *Teague* establishes a "nonretroactivity

24    principle" that "prevents a federal court from granting habeas corpus relief to a

     state prisoner based on a rule announced after his conviction and sentence became

25    final." *Caspari v. Bohlen,* 510 U.S. 383, 389, 114 S. Ct. 948, 127 L. Ed. 2d 236

26    (1994). The *Teague*-bar is an affirmative defense. *See Schiro v. Farley,* 510 U.S.

     222, 228, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994). As with any affirmative

27    defense, the party seeking to invoke it bears the burden of proving that it applies to

     his case. *Id.* In decisions which were rendered before and since the filing date of

28    the Answer, the Ninth Circuit has found, in sum, no *Teague*-bar of the type as

(continued...)

**2.      Petitioner Has Not Established a Basis for Federal Habeas Relief.**

At the time petitioner was sentenced to the upper term on the subject burglary count, a first degree residential burglary conviction in California carried the possibility of a lower term sentence of two years, a middle term sentence of four years, and an upper term sentence of six years, depending on the presence of aggravating or mitigating circumstances subject to determination by the trial court.  Cal. Penal Code § 461(a), former § 1170(b); *see also, e.g., Cunningham,* 549 U.S. at 288-89.  Unless the trial court found aggravating or mitigating circumstances that warranted a respective upward or downward departure to the high or low term, relevant state law called for the trial court to impose the middle term.  *See* former Cal. Penal Code § 1170(b).  The trial court could determine the existence of aggravating or mitigating circumstances based upon facts which had not been presented to a jury, and could make this determination on a preponderance of the evidence rather than a beyond a reasonable doubt standard. *See* former Cal. R. Ct. 4.420(a)-(b), (e), 4.421, 4.423.  The trial court could then exercise its discretion in imposing the upper or lower term prescribed for the

---

[15](...continued)
(unclearly) advanced by respondent with respect to similarly-situated petitioners (*i.e.,* petitioners whose convictions became final post-*Blakely* but before *Cunningham*).  *See Schardt v. Payne,* 414 F.3d 1025, 1033-38 (9th Cir. 2005) (*Blakely* may not be applied retroactively on collateral review to a conviction that became *final before Blakely's* publication; cited but applied incorrectly by respondent, *see* Ans. Memorandum at 19, 20 n.8, 23, 25); *Butler v. Curry,* 528 F.3d 624, 633-39 (9th Cir.), *cert. denied,* ___ U.S. ___, 129 S. Ct. 767, 172 L. Ed. 2d 763 (2008) (*Cunningham* may be applied retroactively to convictions that became final post-*Blakely* but before *Cunningham*).  In addition, respondent's arguments are otherwise too vague and conclusory to establish a *Teague*-bar, in any event.  Thus, respondent's *Teague* argument fails.  *See id.; see also Schiro,* 510 U.S. at 228; *McDonough,* 547 U.S. at 208-10.

1 particular crime. *See People v. Black,* 35 Cal. 4th 1238, 1247, 29 Cal. Rptr. 3d
2 740 (2005) ("*Black I*").

3      In January 2007, approximately three years after petitioner was sentenced
4 by the trial court under the prior version of the DSL, the United States Supreme
5 Court invalidated portions of that law, holding that an upper-term sentence
6 violates the Sixth Amendment if it is imposed on the basis of aggravating facts,
7 "'except for a prior conviction,'" not found by a jury beyond a reasonable doubt,
8 as previously set forth in *Blakely* and other Supreme Court precedent. *See*
9 *Cunningham,* 549 U.S. at 290 ("If the jury's verdict alone does not authorize the
10 sentence, if, instead, the judge must find an additional fact to impose the longer
11 term, the Sixth Amendment requirement is not satisfied") (citing *Blakely,* 542
12 U.S. at 305 and n.8).

13      In reaching its decision, the *Cunningham* Court relied on a bright-line rule
14 established in its prior precedent: "Except for a prior conviction, 'any fact that
15 increases the penalty for a crime beyond the prescribed statutory maximum must
16 be submitted to a jury, and proved beyond a reasonable doubt.'" 549 U.S. at 288
17 (quoting *Apprendi,* 530 U.S. at 490). *See also United States v. Booker,* 543 U.S.
18 220, 244, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005); *Blakely,* 542 U.S. at 301;
19 *Jones v. United States*, 526 U.S. 227, 243 n.6, 119 S. Ct. 1215, 143 L. Ed. 2d 311
20 (1999). Because the DSL mandated a middle term sentence upon a guilty jury
21 verdict and reserved fact-finding for the upper term sentence to the trial court, the
22 Supreme Court determined that the middle term was, for all intents and purposes,
23 the statutory maximum that could be based on the jury's findings alone and
24 rejected the California Supreme Court's analysis to the contrary in *Black I.  See*
25 *Cunningham,* 549 U.S. at 290-93; *see also Ice,* 555 U.S. at ___, 129 S. Ct. at 718
26 (noting that "we held in *Cunningham* that the facts permitting imposition of an
27 elevated 'upper term' sentence for a particular crime fell within the jury's
28 province") (citing *id.* at 274 and omitting internal quotation marks). Imposing the

1    upper term sentence based on facts found solely by the trial court, except for prior

2    convictions, thus exceeded the statutory maximum and, as a result, violated the

3    Sixth Amendment. *See Cunningham,* 549 U.S. at 290-93.

4            Here, as noted above, the trial court did not rely on a prior conviction to

5    impose the upper term on the subject burglary count. Instead, the trial court

6    relied on its determination of factual circumstances in aggravation which were

7    related to and arose from the subject offense (*see* CT at 299-300, 311-12; RT at

8    865-69). Thus, the trial court appears to have rendered a sentencing decision on a

9    basis which is outside the "bright-line rule" of *Cunningham, Blakely*, and their

10   antecedents. *See, e.g., Cunningham,* 549 U.S. at 290-93; *Ice,* 555 U.S. at ___,

11   129 S. Ct. at 718. However, because any sentencing error by the trial court in this

12   respect was harmless, petitioner does not establish grounds for federal habeas

13   relief. *See, e.g., Washington v. Recuenco,* 548 U.S. 212, 218-22, 126 S. Ct. 2546,

14   2551-53, 165 L. Ed. 2d 466 (2006); *Butler,* 528 F.3d at 648 (citing *id.* at 220).

15           As the Ninth Circuit explained in *Butler v. Curry,*

16           Applying *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123

17           L.Ed.2d 353 (1993), [a federal habeas court] must determine whether

18           "the error had a substantial and injurious effect on [the state

19           prisoner's] sentence." *Hoffman v. Arave*, 236 F.3d 523, 540 (9th Cir.

20           2001) (internal quotation marks omitted). Under that standard, we

21           must grant relief if we are in "grave doubt" as to whether a jury

22           would have found the relevant aggravating factors beyond a

23           reasonable doubt. *O'Neal v. McAninch,* 513 U.S. 432, 436, 115

24           S.Ct. 992, 130 L.Ed. 2d 947 (1995). Grave doubt exists when, "in

25           the judge's mind, the matter is so evenly balanced that he feels

26           himself in virtual equipoise as to the harmlessness of the error." *Id.*

27           at 435, 115 S.Ct. 992.

28   / / /

528 F.3d at 648.  In its review, a federal habeas court "may consider evidence presented at sentencing proceedings" and during trial, and looks to relevant California sentencing law to determine if the federal court has "'grave doubt'" that a properly instructed jury would find the subject sentencing factor to be true beyond a reasonable doubt.  *Id.* at 648-51 and n.19; *Price v. Sisto,* 2009 WL 63661, *8 (E.D. Cal., Jan. 8, 2009) (slip op.) (federal habeas court "'may consider evidence presented at sentencing proceedings' when 'conducting harmless error review of an *Apprendi* violation'") (quoting *id.* at 648).  *See also, e.g., Castillo v. Clark,* 610 F. Supp. 2d 1084, 1124-25 (C.D. Cal. 2009) (conducting harmless error review on basis of trial evidence with respect to aggravated finding related to circumstances of offense) (citations omitted); *Meras v. Sisto,* 2009 WL 382641, *10 (E.D. Cal., Feb. 13, 2009) (slip op.) (same) (citations omitted).

     In this case, all aggravating factors applied by the trial court pertained to the commission of the crime under former and current California law, including that aggravating factor which provides that a defendant may be subject to the high term where "[t]he victim was particularly vulnerable[.]"  Cal. R. Ct. 4.421(a)(3). Because California law requires only *one* aggravating factor to set the upper term as the maximum term, "[a]ny *Apprendi* error . . . will be harmless if it is not prejudicial as to just *one* of the aggravating factors at issue."[16]  *Butler,* 528 F.3d at

---

[16]     With respect to the harmlessness of a Sixth Amendment sentencing violation,

> [T]he relevant question is not what the trial court *would* have done, but what it legally *could* have done.  After one aggravating factor was validly found, the trial court legally *could* have imposed the upper term sentence.  That the judge might not have done so in the absence of an additional factor does not implicate the Sixth Amendment, as that consideration concerns only the imposition of a sentence within an authorized statutory range.

*Butler,* 528 F.3d at 648-49 (emphasis in original).

648 (emphasis added);[17] *People v. Black,* 41 Cal. 4th 799, 815, 62 Cal. Rptr. 3d

569 (2007) ("*Black II*") (stating that "under the DSL the presence of *one*

aggravating circumstance renders it lawful for the trial court to impose an upper

term sentence") (emphasis added).  Upon review, the Court is not left with

"'grave doubt' as to whether a jury would have found [the victim to have been

particularly vulnerable] beyond a reasonable doubt." *Butler,* 528 F.3d at 648-49,

651.

As the Ninth Circuit has noted,

> Under California law, vulnerable means "'defenseless,
> unguarded, unprotected, accessible, assailable, one who is
> susceptible to the defendant's criminal act.'" *People v. Weaver,* 149
> Cal.App.4th 1301, 58 Cal.Rptr.3d 18, 27 (2007) (quoting *People v.
> Smith,* 94 Cal.App.3d 433, 156 Cal.Rptr. 502, 503 (1979)).  A victim
> is "particularly" vulnerable only if he is vulnerable to a "special or
> unusual degree, to an extent greater than in other cases." *People v.
> Loudermilk,* 195 Cal.App.3d 996, 241 Cal.Rptr. 208, 214 (1987).  A
> victim is thus not "particularly" vulnerable where all victims of the
> crime of conviction are vulnerable in the same manner. *See People
> v. Bloom,* 142 Cal.App.3d 310, 190 Cal.Rptr. 857, 865 (1983)
> (stating that "[a]ll victims of drunk drivers are 'vulnerable
> victims'").
>
> [¶] . . . . [¶]

---

[17]   *See also Kessee v. Mendoza-Powers,* 574 F.3d 675, 676 and n.1 (9th Cir. 2009) (in federal habeas case reviewing jury trial rights claim challenging upper term sentence imposed by state trial court, indicating that only one aggravating factor is necessary to authorize an upper term sentence and that one such factor would suffice to render a sentence constitutional if found in a manner consistent with the Sixth Amendment) (citing *Butler,* 528 F.3d at 641).

1　　　　In the overwhelming majority of cases, "particularly

2　　vulnerable victims" have had inherent personal characteristics that,

3　　sometimes in combination with the manner in which the crime was

4　　committed, render them more vulnerable than other victims.  *See,*

5　　*e.g., People v. Bishop,* 158 Cal.App.3d 373, 204 Cal.Rptr. 502, 505

6　　(1984) (victims were very young and of small stature); *People v.*

7　　*McGlothin,* 67 Cal.App.4th 468, 79 Cal.Rptr.2d 83, 87 (1998) (the

8　　victims were particularly vulnerable because they were elderly and

9　　were attacked in a parking lot late at night); *People v. Karsai,* 182

10　　Cal.Rptr. 406, 416, 182 Cal.Rptr. 406 ([]1982) (victim was young

11　　and physically weak); *id.* ("While age and physical traits are not the

12　　only factors which may indicate particular vulnerability, they are the

13　　most obvious.").

14　*Butler,* 528 F.3d at 649.  For instance, with respect to a first degree residential

15　burglary conviction, a California appellate court found that a victim was

16　"particularly vulnerable" where the victim was sick and alone in her home at the

17　time the burglary was committed.  *See People v. Watkins,* 6 Cal. App. 4th 595,

18　600-02, 8 Cal. Rptr. 2d 5 (1992).

19　　　　In this case, the prosecution presented evidence that, at the time of the

20　subject first degree residential burglary, a young brother and sister (10- and 15-

21　years-old, respectively) had been sick and stayed home from school while their

22　parents were at work and that no other persons were present in the home at the

23　relevant time.  The prosecution also presented evidence that the siblings initially

24　were in separate rooms on the second floor of the home and that, after entering

25　through the downstairs entrance of their home, petitioner (their next-door

26　neighbor) had personally accosted each child individually upstairs *and* committed

27　felony sexual acts against each of them.  (*See, e.g.,* RT 185-206, 268-71, 273-79,

28　298-309).  The prosecution's theory was that petitioner had committed first

degree residential burglary by unlawfully entering the children's residence (or
individual room(s) inside) with the intent to commit the felony of indecent
exposure with unlawful entry (against the 15-year-old sister alone) and/or child
molestation with unlawful entry (against both the sister and her 10-year-old
brother), and the jury was so instructed.  (RT at 722, 725-34; CT at 143-44, 164-
69).  All three of these counts alleged unlawful entry of an inhabited dwelling
house, and the jury also was so instructed.  (CT at 143-44, 164-66, 168-69).
Given the evidence presented at trial and the jury's guilty verdicts on *all* three
counts (RT at 185-206, 268-71, 273-79, 298-309, 812-17; CT at 219-21), the
Court does not have "grave doubt" that the jury would have found, beyond a
reasonable doubt, that *either* child was "particularly vulnerable" as compared to
all victims of residential burglary, in light of their young ages and that both
children were sick, alone in their home, and initially in separate upstairs rooms
when petitioner (their neighbor), without their knowledge or invitation, entered
the downstairs level of their home and ultimately sexually accosted each of them
upstairs.[18]

_____

[18]      As noted, with respect to the subject burglary charge, the prosecution
argued and the jury was instructed that the felonies that petitioner had the intent to
commit when making unlawful entry into the residence itself (or individual
room(s) of the residence) were indecent exposure (which did not have age as an
element of the offense) and/or child molestation (which did have age as an element
of the offense).  (*See, e.g.,* RT at 722, 725-34; CT at 143-44, 164-69).  While the
jury had to agree that petitioner had the intent to commit at least one of the noted
felonies, in finding petitioner guilty of burglary, the jury did not have to identify
which felony (or felonies) they determined petitioner had intended to commit
when making the unlawful entry (or entries).  (*See, e.g.,* CT at 143-44, 166, 178).
Thus, it may be that, in finding petitioner guilty of burglary, the jury found
petitioner had unlawfully entered the residence with the intent to commit a non-
age-based felony *and/or* an age-based felony.  If only the latter, *and* if broadly
construed as presenting an element of the residential burglary itself which, in turn,
was age-based, the Court notes the "simple fact that a victim is a minor cannot be

(continued...)

1        Thus, as set forth above, the Court has no "grave doubt" that a jury

2   properly instructed on California law and applying a reasonable doubt standard

3   would have found, like the trial court, the same aggravating factor (Cal. R. Ct.

4   4.421(a)(3)) to be true; therefore, because at least one aggravating factor supports

5   petitioner's upper term sentence on the subject burglary count, any Sixth

6   Amendment sentencing violation by the trial court thereto was harmless. *See,*

7   *e.g., Butler,* 528 F.3d at 648; 28 U.S.C. § 2254(d).  As a result, by the allegations

8   of Grounds Two and Three, petitioner fails to establish a basis for federal habeas

9   relief. *Id.*

10

11

12   _____

13   [18](...continued)

14   used as a factor in aggravation where the victim's minority is an element of the
    offense." *People v. Robinson,* 11 Cal. App. 4th 609, 615, 14 Cal. Rptr. 2d 88

15   (1993) (citation omitted), *disapproved on other grounds by People v. Scott,* 9 Cal.
    4th 331, 353 n.16, 36 Cal. Rptr. 2d 627 (1994).  However, even where a victim's

16   age is an element of a charged offense or enhancement, a victim's age *in*

17   *combination* with other facts (such as physical stature or isolation) is enough for a
    victim to be considered "particularly vulnerable" to support the imposition of an

18   aggravated term under California law.  *See, e.g., id.* ("a child victim's particular

19   vulnerability can be used in appropriate circumstances even if his or her age is an
    element of the offense") (citation omitted); *People v. Alvarado,* 87 Cal. App. 4th

20   178, 195-96, 104 Cal. Rptr. 2d 624 (2001) (same).  Here, in terms of a residential

21   burglary committed with the intent to commit child molestation, the Court has no
    "grave doubt" that the jury would have found the victims to be particularly

22   vulnerable in light of their young ages *in combination* with their ailing physical

23   condition, that they were alone in the residence and that the perpetrator was an
    adult neighbor.  *See, e.g., Robinson,* 11 Cal. App. 4th at 615 ("The record, with its

24   indications of an adolescent suffering family tribulations and vulnerable to offer of

25   adult friendship" would support finding that victim of sodomy against a minor was
    "particularly vulnerable" as a factor in aggravation under rule 421(a)(3)); *People*

26   *v. Garcia,* 166 Cal. App. 3d 1056, 1069-70, 212 Cal. Rptr. 822 (1985) (victim of

27   forcible child molestation was "particularly vulnerable" based not only on her

28   extremely young age but also on her close relationship to the defendant, who also
    lived in the victim's home).

## RECOMMENDATION

The Magistrate Judge therefore recommends that the Court issue an order: (1) approving and adopting this Report and Recommendation; and (2) directing that judgment be entered denying the First Amended Petition on the merits with prejudice.

DATED: March 5, 2010

_/S/ FREDERICK F. MUMM_
FREDERICK F. MUMM
United States Magistrate Judge

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to timely file Objections as provided in the Local Rules Governing the Duties of the Magistrate Judges, and review by the District Judge whose initials appear in the docket number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.